**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**BRUNSWICK DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CASE NO.: 2:14-CR-32 |
| | : | |
| AQUILLA TERRELL RANDOLPH, | : | |
| | : | |
| Defendant. | : | |

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter came before the Court on April 7, 2015, for a hearing on the Government's Motion for Revocation of Defendant Aquilla Terrell Randolph's (hereinafter "Defendant") Pretrial Release. (Doc. 67.) For the reasons set forth below and stated on the record at the hearing, the Government's Motion is **GRANTED**, and Defendant will be detained pending resolution of this matter. Further, the undersigned **RECOMMENDS** that the $30,000 surety Bond posted in this case be **FORFEITED** but that $27,000 of that $30,000 be **SET ASIDE** and the surety's Bond otherwise be **EXONERATED**.[1]

## BACKGROUND

In this action, Defendant is charged with having committed multiple crimes by having prepared and submitted false and fraudulent tax returns. (Docs. 1, 43.) On December 2, 2014, this Court entered an Order setting the conditions of Defendant's pretrial release. (Doc. 13.) That Order set bond in the amount of $30,000 to be secured by a solvent surety. (Id. at p. 1.) In addition, the Court ordered, among other things, that Defendant must not violate federal, state, or

---

[1] The authority of a Magistrate Judge to issue a final order regarding forfeiture of a bond is not settled. See United States v. Balbuena, No. 8:08-CR-271-T-27TGW, 2009 WL 87413, at *1 (M.D. Fla. Jan. 13, 2009). Accordingly, on the issue of forfeiture, a Report and Recommendation is being issued rather than an Order.

local law while on release and that he "shall not maintain any position of trust or position with access to personal identifiers" and "may not prepare any tax returns or act as a tax advisor." (Id. at pp. 1–2.) Also on December 2, 2014, Defendant executed an Appearance Bond and agreed to "comply with all conditions set forth in the Order Setting Conditions of Release." (Doc. 14.) The Bond made clear that if Defendant did not fulfill that agreement, the Bond and any security would be forfeited and the Court could "order a judgment of forfeiture against the defendant and each surety for the entire amount of the [B]ond, including interests and costs." (Id. at p. 1.) The Bond was secured by Elmer C. McGill ("Mr. McGill"), a close friend of Defendant who agreed to act as a solvent third-party surety. (Id. at p. 2.) In executing the Bond, Defendant and Mr. McGill acknowledged that they had been advised of all conditions of release set by the Court. (Id.)

At the hearing on the instant Motion, the Government presented several witnesses who provided clear and convincing evidence that Defendant had violated the terms of his release. (See generally Doc. 70.) These witnesses detailed that Defendant had continued to operate a tax preparation business after his release on bond. Several witnesses testified that they had given Defendant their financial records with personal-identifying information in the calendar year 2015 to prepare tax returns for income they had earned in 2014. These witnesses testified that they had paid Defendant for tax preparation services and that Defendant had provided such services and given the individuals tax preparation advice. At least one witness testified that Defendant had included false information on the witness's tax return, including information regarding itemized deductions that had no factual basis.

The Court also heard testimony from Mr. McGill, the surety. Mr. McGill testified that he has known Defendant for all of Defendant's life and that he considers Defendant to be family.

Mr. McGill acknowledged that he was aware of the Order Setting Conditions of Release and its terms when he agreed to act as Defendant's surety. However, the evidence revealed that after Defendant's release, Mr. McGill acted as a conduit between three tax customers and Defendant. Mr. McGill testified that he picked up papers from these customers and delivered them to Defendant. He also acted as an intermediary for payments from the customers to Defendant. (Government's Hr'g Ex. 11.) Mr. McGill acknowledged that he believed the papers he delivered to Defendant were tax documents. However, he stated that the papers were in a sealed envelope and that Defendant told Mr. McGill that another individual would prepare the customer's tax returns.

## DISCUSSION

This Court expects the parties before it to abide by the Court's Orders. Defendant not only failed to abide by the Order Setting the Conditions of Release, he willfully and repeatedly violated that Order. Defendant's blatant disregard for the conditions of his release cannot be excused or explained away.

At the hearing on the instant Motion, Defendant maintained, through counsel, that he was merely acting as a middleman between his preexisting customers and that he was referring the tax preparation work to another individual. The uncontroverted evidence belies this explanation. For example, on February 26, 2015, Defendant prepared an amended tax return for a new customer. (Government's Hr'g Ex. 8.) Defendant issued an invoice to this customer directly from his own tax services company. (Id. at p. 1.) Defendant listed himself as the tax preparer on the return and listed identifying information, including his firm's name, businesses address, phone number, and employer identification number. (Id. at p. 3.) Moreover, the Government presented evidence that each customer had paid hundreds of dollars directly to Defendant. (See,

e.g., Government's Hr'g Exs. 6, 9, 11, 13.)  Additionally, customers testified that they met with Defendant at his home to exchange documents and discuss their tax returns.  Further, Defendant's phone records revealed that he had direct communication with customers through phone calls and text messages.  (See, e.g., Government's Hr'g Exs. 14, 16–17.)  Even if Defendant had not prepared tax returns for these customers, he did not dispute that he had possessed the customer's tax documents, which included social security numbers, income statements, and other sensitive information.  In so doing, Defendant possessed personal-identifying information in direct violation of his conditions of release.  (See Doc. 13.)

## I. REVOCATION

In light of the foregoing and the evidence received at the hearing, the Court finds clear and convincing evidence that Defendant violated the conditions of his release by maintaining a position of trust, by maintaining a position with access to personal identifiers, by preparing tax returns, and by acting as a tax advisor.  See 18 U.S.C. § 3148(b)(1)(B).  The Court also finds probable cause that Defendant committed a federal crime while on release by preparing at least one fraudulent tax return.  (See Government's Hr'g Ex. 8); see also 18 U.S.C. § 3148(b)(1)(A); 26 U.S.C. § 7206.  Additionally, if Defendant were released, he would be unlikely to abide by any condition or combination of conditions of release.  See 18 U.S.C. § 3148(b)(2)(B).  For these reasons, the Court **ORDERED** at the hearing that Defendant's Bond be **REVOKED** and that Defendant be **DETAINED** in a corrections facility separate, to the extent practicable, from his co-Defendant in this matter.

## II. FORFEITURE

Having found that a condition of the Bond has been breached, pursuant to Federal Rule of Criminal Procedure 46(f)(1), the Court "must declare the bail forfeited."  Fed. R. Crim. P.

46(f)(1). Forfeiture is triggered not just by a failure to appear but also by violations of other conditions. Brown v. United States, 410 F.2d 212, 218 (5th Cir. 1969).[2] Additionally, forfeiture results in liability not just as to the defendant but also as to any surety on the bond. See United States v. Vaccaro, 51 F.3d 189, 193 (9th Cir. 1995) (holding defendant and surety jointly and severally liable for forfeiture); United States v. Balbuena, No. 8:08-CR-271-T-27TGW, 2009 WL 87413, at *1 (M.D. Fla. Jan. 13, 2009). As described above, Defendant has repeatedly breached the express conditions of his release, and, therefore, his bond must be forfeited.

However, under Federal Rule of Criminal Procedure 46(f)(2), the Court may set aside a forfeiture in whole or in part if "it appears that justice does not require bail forfeiture." Fed. R. Crim. P. 46(f)(2). Rule 46(f)(1) combines with Rule 46(f)(2) and (f)(4) to give district courts "virtually unbridled discretion" in remitting bond forfeiture. United States v. Gonzalez, 452 F. App'x 844, 845 (11th Cir. 2011). Factors that courts consider when assessing whether to set aside all or a portion of a forfeiture include the defendant's willfulness in breaching release conditions; the amount of delay caused by the defendant's default; the surety's participation; the cost, inconvenience, and prejudice suffered as a result of the breach; any mitigating factors offered by the defendant; and whether the surety is a professional as opposed to a family member or friend. See United States v. Diaz, 811 F.2d 1412, 1415 (11th Cir. 1987); see also United States v. Nguyen, 279 F.3d 1112, 1115–16 (9th Cir. 2002).

Justice requires setting aside a portion, but not all of, the forfeiture in this case. Defendant's willfulness in breaching the conditions of his Bond cannot be overstated. He provided no mitigating evidence at the hearing but instead continued to maintain that he had complied with his Bond conditions, despite mounds of unrefuted evidence to the contrary.

---

[2] The Eleventh Circuit has adopted as binding decisions issued by the former Fifth Circuit prior to September 30, 1981. Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1210 (11th Cir. 1981).

Furthermore, while Defendant's breach did not cause delay in the trial of this case, it resulted in cost and inconvenience to the Court, the Government, and Defendant's customers.

The Court recognizes that forfeiture results in liability to Mr. McGill. Nonetheless, the Bond made clear that if Defendant breached the conditions, the Court could order judgment against "the defendant and each surety," and Mr. McGill acknowledged that he knew Defendant's conditions of release. (Doc. 14, pp. 1–2.) Despite this knowledge, Mr. McGill participated in the violation of those conditions. However, Mr. McGill is not a professional surety but rather a friend of Defendant. Additionally, when called as a witness by the Government at the hearing, Mr. McGill testified truthfully. Having observed Mr. McGill testify, it appears that his actions were not motivated by profit or some nefarious interest but rather by charity toward a friend. In addition, while Mr. McGill should have been aware that Defendant violated the conditions of his Bond, it does not appear that he was aware of the extent of Defendant's violations.

In light of the foregoing and the evidence received at the hearing, the Court should **SET ASIDE** $27,000 of the $30,000 forfeiture. Accordingly, $3,000 of the Bond should remain forfeited, and the surety's Bond should be otherwise **EXONERATED**.

## CONCLUSION

For the reasons set forth above and stated on the record at the hearing on this matter, Defendant's Bond is **REVOKED**. Further, the undersigned **RECOMMENDS** that $3,000 of the Appearance Bond from Defendant and his surety, Elmer C. McGill, be **FORFEITED** to the United States pursuant to Federal Rule of Criminal Procedure 46(f)(1). The forfeiture of the remaining $27,000 should be **SET ASIDE**, and the surety's Bond should be otherwise **EXONERATED**.

Any party seeking to object to this Order and Report and Recommendation is **ORDERED** to file specific written objections within fourteen (14) days of the date on which this Order and Report and Recommendation is entered. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions herein. See Thomas v. Arn, 474 U.S. 140, 155 (1985).

If the Court receives any timely objections to the Order that Defendant be detained pending trial, a district judge will review such objections and will modify or set aside a part of the Order only if it is is contrary to law or clearly erroneous. Fed. R. Crim. P. 59(a). If the Court receives any timely objections to the Report and Recommendation regarding forfeiture, a district judge will consider such objections and, upon a de novo of the record, may accept, reject, or modify, in whole or in part, the findings or recommendations herein. 28 U.S.C. § 636(b)(1)(C); Fed. R. Crim. P. 59(b). Objections not meeting the timeliness and specificity requirements set out above will not be considered by a district judge.

The Clerk of Court is **DIRECTED** to serve a copy of this Order and Report and Recommendation upon all parties and upon the surety, Elmer C. McGill.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 9th day of April, 2015.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA